UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALITHA BAER, PRISCILLA BAER, MATTHEW BAER, and JOSHUA BAER, by his father and next friend, Plaintiffs, | ) ) ) ) ) |
| v. | ) No. 08 C 3886 |
| | ) Judge Blanche Manning |
| JESSE WHITE, sued in his official capacity as the Secretary of State of the State of Illinois, Defendant. | ) ) ) ) ) |

## MEMORANDUM AND ORDER

The plaintiffs, four individuals between the ages of 17 and 23, are eligible for and desire to obtain Illinois drivers' licenses. However, it is their position that their individual religious beliefs prevent them from providing social security numbers to the defendant, Jesse White, who is being sued in his official capacity as the Secretary of State of Illinois. In their amended complaint, the plaintiffs allege that the Illinois statute and regulation governing the issuance of driver's licenses to persons who object to providing their social security numbers is unconstitutional and violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*. The defendant has moved to dismiss all of the claims against it. For the reasons stated below, the motion to dismiss is granted in part and denied without prejudice in part.

**I.      Facts**

The following well-pleaded facts are accepted as true for purposes of this motion to dismiss. The plaintiffs are four siblings: Talitha Baer (23 years old), Priscilla Baer (21 years old), Matthew Baer (19 years old) and Joshua Baer (17 years old), who is suing through his father and next friend, David Baer. They desire to obtain Illinois state driver's permits and licenses but have not applied for them due to the fact that their religious beliefs prohibit them from using social security numbers as personal identifiers. In their response to the motion to dismiss, the plaintiffs explain that they believe that Revelation 13:16-17 prohibits them from using a social security number as a personal identifier because it is equivalent to a "mark," "name," or "number" of the "beast," with the beast being, according to them, a government leader.

Illinois law requires that a person applying for a driver's license provide a social security number on his or her application. Specifically, section 6-106 of the Illinois Vehicle Code states in relevant part:

> Every application shall state the legal name, social security number. . . of the applicant. . . . The Secretary of State may in his discretion substitute a federal tax number in lieu of a social security number, or he may instead assign an additional distinctive number in lieu thereof, where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number. The Secretary of State shall, however, determine which religious orders or sects have such bona fide religious convictions.

In addition, Title 92 of the Illinois Administrative Code § 1063.63 states in relevant part that:

> a) Members of religious groups whose faith will not permit them to obtain social security numbers may request the social security number be omitted on their driver's license application.
>
> b) The applicant for a special religious number shall state in the person's own handwriting on an exception form, supplied by the Secretary of State at a Driver Services Facility, that he or she is a member of a certain religious group and that the person wants to apply for a driver's license without applying for a social security card. The applicant shall affix his or her signature immediately after the statement on the exception form.
> . . .
>
> f) The applicant shall sign an affidavit, supplied by the Secretary of State, stating that the use of a social security number on a driver's license file is against his or her religious convictions and stating the reasons why the applicant holds these beliefs. The affidavit shall also contain a statement from his/her religious leader or minister attesting that the use of a social security number is against the religious convictions of the applicant's faith. The submitted affidavit shall be notarized.

According to the plaintiffs, "though [their] religious order neither promotes or [sic] encourages voluntary participation in the federal Social Security program, it does not prohibit such; rather, it respects matters of individual conscience on such issues." Am. Compl. at ¶¶ 3(2), 4(2), 5(2), 6(2). They further allege that "[t]he Defendant has indicated in his response to third party Freedom of Information Act (FOIA) requests that applicants, such as this Plaintiff, will not have consideration for [their] individual beliefs." *Id*. at 3(5), 4(5), 5(5), 6(5). The plaintiffs further allege that they were denied access to an exception form, described above, due to a purported lack of availability.

In their amended complaint, the plaintiffs allege that the Illinois statute and regulation governing the issuance of driver's licenses to persons who object to providing their social security numbers is unconstitutional in that it violates their First Amendment right to freedom of

religion, their Fourteenth Amendment right to freedom to travel, their Fourteenth Amendment Right to equal protection, and their Fourteenth Amendment right to due process. The plaintiffs also allege a claim under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*.

## II.     Standard on Motion to Dismiss

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As noted by the Seventh Circuit:

> The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (alteration in *Bell Atlantic* ). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if it does not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007)(observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65 (citations omitted).

## III.    Analysis

As an initial matter, the plaintiffs do not state whether their constitutional challenges are facial or as-applied. In light of the plaintiffs' failure to address the issue and the fact that the plaintiffs have not alleged that they have had any application for an exemption denied or rejected, the court construes the plaintiffs' challenges to the relevant statute and rule to be facial. *Kraimer v. City of Schofield*, 342 F. Supp. 2d 807, 815-16 (W.D. Wis. 2004)(concluding that any as-applied challenge was waived on ground that the plaintiffs did not discuss the as-applied

challenge or make any effort to explain its basis).

A.  First Amendment–Free Exercise of Religion (Count I)

The plaintiffs allege that "[t]he entire process for approving a religious exemption [from] the requirement that a driver's license applicant must provide a social security number, [sic] only if the applicant's entire religious order (church) or sect (denomination) prohibits the use of the social security number, consists of a standardless, unguided, discretionary system enforced and executed by Defendant White . . ." Am. Comp. at ¶ 19. The plaintiffs further allege that "[s]uch a determination on the part of Defendant White constitutes unlawful inquiry into matters of ecclesiastical cognizance and polity, and as such violates the First and Fourteenth Amendments to the United States Constitution, on its face." *Id*. at ¶ 20. Finally, they allege that the "invidious, discriminatory process, as enforced and carried out by Defendant White . . . violates the guarantee found in the First Amendment . . . of the free exercise of religion." *Id.* at 21.

The First Amendment protects the free exercise of religion and was made applicable to the states through the Fourteenth Amendment. *Callahan v. Fermon*, 526 F.3d 1040, 1043 (7th Cir. 2008). The defendant moves to dismiss the plaintiffs' first amendment claim on the ground that the exemption procedures of which the plaintiffs complain are neutral, generally applicable, and have only an incidental effect of burdening religious exercise. The plaintiffs do not address this argument in their response and instead make unsupported assertions regarding "content-based" and "viewpoint-based" discrimination and "strict scrutiny."

As an initial matter, the United States Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Employment Division, Dep't. of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990). Indeed, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id*. at 879 (internal quotes omitted). *See also City of Boerne v. Flores*, 521 U.S. 507, 514 (1997) ("*Smith* held that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling government interest").

The defendant, understandably, relies heavily on *Mefford v. White*, 770 N.E.2d 1251 (Ill. App. Ct. 2002), in which the Illinois Appellate court addressed the issue currently before the court. The plaintiff had applied for a driver's license and sought relief, pursuant to administrative rule § 1030.63, quoted above, from the submission of his social security number based on his religious beliefs. *Id*. at 1253. The Director of the Driver's Services Department denied his request because "the plaintiff had not shown he was a member of a religious faith that did not permit its members to obtain social security numbers, as required by the statute and the rule." *Id*. The plaintiff sought an administrative hearing at which he testified that the social security number can be used as a "universal identifier" about which the Book of Revelations warns. As in the case here, the plaintiff testified that his church does not prohibit the use of

social security numbers but that "his views reflected his individual conclusion." *Id*. The hearing officer concluded that while the plaintiff professed a bona fide and sincere religious belief, he had not satisfied the requirements of § 1030.63 because the plaintiff's church permitted "its members to obtain social security numbers and that 'most, if not all' of the members of plaintiff's church have provided social security numbers on driver's license applications." *Id*. at 1254. The hearing officer, however, recommended that the plaintiff's request be granted because the statute and rule violated the free exercise clause of the First Amendment. *Id.*

The Secretary of State issued a final decision denying the plaintiff's request for a driver's license because "the plaintiff failed to meet the rule's requirements for a religious exemption . . . ." *Id*. The plaintiff then filed a complaint for administrative review in state court challenging only the constitutionality of the statute and the rule. *Id*. The state court affirmed the Secretary's decision and the plaintiff appealed.

On appeal, the Illinois Appellate Court found the requirement that a person provide a social security number prior to obtaining a driver's license to be a neutral, generally applicable law. Specifically, the court stated that:

> According to the Supreme Court, a law is not "neutral" if the object of the law is to infringe upon or restrict practices because of their religious motivation. In the case at bar, we fail to see how the statute and rule at issue could not be seen as neutral. Facially, the statute and rule do not target religious practice and are not aimed at regulating any activity that could be even considered religious. Certainly, applying for a driver's license is not among traditional religious practices. Further, the statute and rule cannot be said to be a "covert suppression of particular religious beliefs' [Citation.]." Plaintiff's beliefs notwithstanding, we are not persuaded that requiring an applicant for a driver's license to prove his identity as fully as possible has, as its primary purpose, some form of "religious gerrymander." In sum, we find section 6-106(b) of the Vehicle Code and Title 92, section 1030.63, of the Illinois Administrative Code to be neutral.
>
> Similarly, we are not persuaded that the statute and rule at issue are not generally applicable. While the Supreme Court has not defined with precision the standard used to evaluate whether a law is of general application, we do not find, and plaintiff has not offered, any reason why the statute and rule are not generally applicable. Every applicant for a driver's license must supply his social security number, unless he has not obtained a social security number on the basis of religious belief or is exempt from obtaining a social security number. 625 ILCS 5/6-106(b) (West 1998) ("*Every* application *shall* state the * * * social security number * * * of the applicant * * *" (emphases added)). The only exemption from providing the social security number is not based on any religious classification but on the mere fact that an applicant has not obtained a social security number. This demonstrates no animosity by the legislature to any religious group or

> practice, and may, in fact, reflect an acknowledgment that religious practice may involve a conscious choice to not apply for a social security number. Overall, the statute and rule have only an incidental effect on religious practice.

*Id*. at 1258 (internal citations omitted).[1]  *See also Miller v. Reed*, 176 F.3d 1202, 1206-08 (9th Cir. 1999)(concluding that requirement that driver's license applicants provide social security numbers did not violate free exercise clause of the First Amendment); *Stoianoff v. Commissioner of Motor Vehicles*, 107 F. Supp. 2d 439, 449-50 (S.D.N.Y. 2000)(rejecting free exercise challenge to requirement that driver's license applicants provide social security numbers), *aff'd without pub. op.*, 12 Fed. Appx. 33 (2nd Cir. 2001).

As noted by the Supreme Court, "the protections of the Free Exercise Clause pertain if the law at issue . . . regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993)(citations omitted).  How one characterizes the claim is important because it is the nature of the government action that determines the appropriate level of scrutiny.  If, as discussed above, the law is facially neutral and generally applicable, then the plaintiffs' free exercise claim fails if it is supported by a rational basis.  *Smith*, 494 U.S. at 879.  "On the other hand, if the law is not neutral (*i.e.*, if it discriminates against religiously motivated conduct) or is not generally applicable (*i.e.*, if it proscribes particular conduct only or primarily when religiously motivated), strict scrutiny applies . . . ."  *Tenafly Eruv v. The Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002)(*citing Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)).  "A law failing to satisfy these requirements [of facial neutrality and general applicability] must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest."  *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

As described above, the defendant asserts that the law is facially neutral and generally applicable and is, therefore, subject to rational basis review.  The court, as a general matter, agrees with the cases cited by the defendant that facially neutral and generally applicable laws requiring the provision of a social security number drivers' license are subject to rational basis scrutiny and do not violate the Free Exercise Clause.  However, the defendant's brief is noticeably silent regarding the portion of the statute and the rule that appear to be the basis of the plaintiff's primary objection–that the requirements in 5/6-106(b) and 1030.63 that an individual obtain a statement from his or her religious leader "attesting that the use of a social security number is against the religious convictions of the applicant's faith," and that the Secretary of State "determine[s] which religious orders or sects have such bona fide religious convictions" violate the Free Exercise Clause.

---

[1]Indeed, as noted by another court, "virtually every other jurisdiction that has addressed a claim that furnishing one's social security number violates free exercise rights has rejected the argument."  *See Champion v. Secretary of State*, 761 N.W.2d 747, 757 n.8 (Mich. Ct. App. 2008), and cases cited therein.

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Church of the Lukumi*, 508 U.S. at 533. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*. Moreover, as noted by the Supreme Court, "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with facial neutrality." *Church of the Lukumi*, 508 U.S. at 534. *See also Tenafly Eruv*, 309 F.3d at 166 ("Because the ordinance in *Lukumi* gave officials discretion to consider 'the particular justification' for each violation, it 'represent[ed] a system of individualized government assessment of the reasons for the relevant conduct," triggering under *Smith* strict scrutiny of the ordinance's application to religiously motivated conduct.")(citations and internal quotation marks omitted).

Although the *Mefford* court concluded that the statute and rule were facially neutral because they "do not target religious practice and are not aimed at regulating any activity that could be even considered religious," *Mefford*, 770 N.E.2d at 175-76, this court notes that the *Mefford* court does not appear to have focused on the exemption provisions of the statute and rule, which arguably allow for application of the exemption on a discretionary basis. While not opining on whether or not the exemptions are facially neutral, the court notes that the defendant has not addressed the issue. In the same vein, the defendant has failed to discuss whether the exemptions are generally applicable.

Because the defendant has not fully addressed the issues associated with the plaintiffs' claim under the Free Exercise Clause, the court denies the defendant's motion to dismiss on this ground without prejudice.

In the interests of completeness, the court notes that the plaintiffs also assert that "the statute and rule place White in the constitutionally untenable position of extensively inquiring into religious law and practice, which the State is forbidden to do by the First Amendment." Response at 8. However, one of the cases that the plaintiffs cite in support of this contention deals with the principle that the Free Exercise Clause prevents a court from probing into the internal procedures of a church or religious bodies, which is not at issue here. *See Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994)(affirming district court decision that First Amendment deprived the court of subject matter jurisdiction over the plaintiff-probationary minister's Title VII claim because the Free Exercise Clause prevented the court from delving into employment decisions of the Methodist Church). And in *Redmond v. GAF Corp.*, 574 F.2d 897 (7th Cir. 1978), another case cited by the plaintiffs in support of this argument, the court addressed the issue of religious discrimination under Title VII, again, a topic not at issue in this case.

Finally, the plaintiffs' assertion that the statute and rule allow for improper content-based and viewpoint-based discrimination is entirely unsupported by any authority or reference to the language of the statute and rule at issue. It is not this court's role to craft arguments for a party.

The defendant's motion to dismiss the First Amendment challenge is denied without prejudice.

### B.  Right to Travel (Count II)

The plaintiffs allege that the statute and rule, which require a person to provide an affidavit from a religious leader attesting that the use of social security numbers is against the applicant's faith, violate their right to travel. However, the denial of only one mode of transportation does not violate the right to interstate travel. *Matthew v. Honish*, 233 Fed. Appx. 563 (7th Cir. 2007)((affirming dismissal of claim that state licensure and registration requirements violate the right to travel because "[w]ithout vehicle licenses, Dean is denied only 'a single mode of transportation-in a car driven by himself,' and this does not impermissibly burden his right to travel")(*citing Miller v. Reed*, 176 F.3d 1202, 1205-06 (9th Cir. 1999)(holding that there is no "fundamental right to drive" and affirming dismissal of complaint based on state's refusal to renew citizen's driver's license)).[2]

The defendant's motion to dismiss Count II is granted.

### C.  Equal Protection (Count III)

The plaintiffs assert that by allowing exemptions to individuals who belong to sects or denominations that forbid providing a social security number while allegedly denying the exemption to individual conscientious objectors, as these plaintiffs allege they are, the statute and rule violate the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

As noted by the Seventh Circuit:

> The purpose of the Equal Protection Clause of the Fourteenth Amendment is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Where . . . no fundamental right or suspect classification is at issue, equal protection claims are evaluated under the rational-basis standard of review.

*Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006)(internal citations omitted).

---

[2]The court recognizes that under Cir. Rule 32.1, the decision in *Matthew v. Honish*, 233 Fed. Appx. 563 (7th Cir. 2007), is not precedential, but the court cites to it because it agrees with its conclusion.

However, if a statute classifies by race, alienage, or national origin, it will be subject to strict scrutiny. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006)(citation omitted). Moreover, "[h]eightened scrutiny also is appropriate when government action interferes with a person's fundamental rights, such as freedom of speech or religion." *Id*. (citation omitted).

The defendant asserts that the statute and rule do not implicate a suspect class or a fundamental right and therefore, the rational basis test applies. Generally, if a court concludes that governmental action is facially neutral and generally applicable (*i.e.*, that it did not violate the Free Exercise Clause), then it applies rational basis review to an equal protection claim regarding the same governmental action. *See Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)(citations omitted). Here, however, the court denied the Free Exercise claim without prejudice and thus has not determined the applicable standard of review.

Moreover, the court again concludes that the defendant has failed to focus on the relevant portion of the statute and regulation. Rather than addressing the equal protection claim as it relates to the exemption provision, the defendant merely states that it cannot be "said that Plaintiffs have a fundamental right to a driver's license." While that may be true, the defendant does not address whether the exemption provision implicates the fundamental right to the free exercise of one's religion. Moreover, because the issue of whether the exemption provision violates the Free Exercise Clause has not yet been resolved, the court cannot conclude that the exemption provision does not implicate the right to practice one's religion.

Accordingly, the court denies the motion to dismiss the Equal Protection Claim without prejudice.

### D. Due Process (Count IV)

The Due Process Clause of the Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14 § 1. The plaintiffs allege that the statute and rule violate due process because they "consist[] of a standardless, unguided, discretionary system" which results in the plaintiffs being deprived of: (1) their liberty interest in their right to travel; (2) their liberty interest in obtaining a driver's license; and (3) their property interest in obtaining a driver's license.

"A procedural due process claim involves a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law." *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003)(citations omitted).

The plaintiffs do not have a fundamental right to drive themselves in a car, as discussed above, *see* Section III.B; thus, their right to travel has not been implicated.

The plaintiffs also claim a property and liberty interest in a drivers' license. With respect to a property interest, the Seventh Circuit has stated that:

> To claim a property interest protected by the Fourteenth Amendment, "a person . . . must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."

*Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 728 (7th Cir. 2006)(internal citations omitted). The Supreme Court has recognized that "once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). But, the amended complaint alleges that the plaintiffs have yet to receive their drivers licenses; thus, their right to their continued possession has not been implicated.

Regarding the initial issuance of the license, the Seventh Circuit has acknowledged that "the Secretary [of State]'s regulations could create a property interest if they enumerated specific requirements, the fulfillment of which would result in issuance, or at least result in the reasonable expectation of issuance." *Doe v. Edgar*, 721 F.2d 619, 624 (7th Cir. 1983). In *Doe*, the Seventh Circuit rejected the plaintiff's due process challenge to a policy of the Illinois Secretary of State denying reinstatement of or issuing a restricted driving permit to individuals solely because they had two or more convictions for driving under the influence and five years had not elapsed since the date of the latest revocation. The Seventh Circuit noted that the plain wording of the statute governing the issuance of restricted driving permits "reveal[ed] that the applicant has a mere unilateral expectation of issuance and not a legitimate claim of entitlement to it." *Id*. at 624 (citation omitted). Specifically, the statute stated in relevant part that:

> Whenever a person is convicted of any of the offenses enumerated in this section . . . the Secretary of State *in his discretion . . . may* issue to such person a restricted driving permit . . . *except that this discretion shall be limited to cases where undue hardship would result from failure to issue such restricted driving permit*.

*Id*. n.9 (*quoting* Ill. Rev. Stat. Ch. 95 1/2, § 6-205(c))(emphasis added in opinion). The court concluded that because neither the statute nor the Secretary's policy enumerated any requirements that would create a reasonable expectation of issuance, no property right existed in the reinstatement of or issuance of a restricted license after two convictions of driving under the influence. *Id*. at 624. *See also Brown*, 462 F.3d at 729 ("We cannot conclude . . . that Michigan City's practice of opening its parks to its residents free of charge created a constitutionally cognizable property interest, which was violated when [the plaintiff] was banned from those parks" because the plaintiff "cannot point to a state law, or another independent source, that *guarantees* him access to Washington Park." *Id*. (emphasis in original).

Here, the relevant portion of the statute at issue states that:

> Every application shall state the legal name, social security number . . . of the applicant . . . . The Secretary of State *may in his discretion* substitute a federal tax number in lieu of a social security number, or he may instead assign an additional distinctive number in lieu thereof, where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number. The *Secretary of State shall, however, determine which religious orders or sects have such bona fide religious convictions*.

625 ILCS 5/6-106(b)(emphasis added). Thus, as with the statute at issue in *Doe*, the language of the statute indicates that the plaintiffs have only a unilateral expectation of issuance if they decide not to submit their social security numbers given the Secretary's discretion in allowing the use of a federal tax number or assigning a distinctive number. Accordingly, the court concludes that the plaintiffs have no protected property interest in a drivers license under circumstances where they do not provide a social security number.

As to the liberty interest, the plaintiffs assert that their "interests in legally driving are liberty interests because they involve the fundamental right to travel." Response at 9, Dkt. #38. However, as already noted, the plaintiffs' right to travel is not implicated by the denial of the drivers' license given that they have no fundamental right to a license to operate a car driven by them. Thus, the court concludes that the plaintiffs have not articulated a protected liberty interest.

The defendant's motion to dismiss Count IV, the due process claim, is granted.

### E.     Illinois Religious Freedom Restoration Act ("IRFRA")(Count V)

The defendant moves to dismiss the IRFRA claim asserting that because the plaintiffs have failed to state a valid federal claim, the court should decline to exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c). However, because the court is not dismissing all of the federal claims, it will continue to exercise jurisdiction over the IRFRA claim.

**ENTERED:**

**Date: June 3, 2009**

                                                                                                       _____
                                                                                                       **Blanche M. Manning**
                                                                                                       **United States District Judge**