| | |
|---|---|
| **TALITHA BAER-STEFANOV,** | **)** |
| **PRISCILLA BAER,** | **)** |
| **MATTHEW BAER, and JOSHUA BAER,** | **)** |
| **Plaintiffs,** | **)** |
| | **)** |
| **v.** | **)**   **No. 08 C 3886** |
| | **)**   **Judge Blanche Manning** |
| | **)** |
| **JESSE WHITE, sued in his official** | **)** |
| **capacity as the Secretary of State of** | **)** |
| **the State of Illinois,** | **)** |
| **Defendant.** | **)** |

**MEMORANDUM AND ORDER**

The plaintiffs, four individuals between the ages of 18 and 24, are eligible for and desire to obtain Illinois driver's licenses. It is their position that their individual religious beliefs prevent them from providing social security numbers to the defendant, Jesse White, who is being sued in his official capacity as the Secretary of State of Illinois. In their amended complaint, the plaintiffs allege that the Illinois statute and regulation governing the issuance of driver's licenses to persons who object to providing their social security numbers is unconstitutional and violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*. The defendant has moved to dismiss all of the claims against him. For the reasons stated below, the motion to dismiss is denied.

**I.      Facts**

The following well-pleaded facts are accepted as true for purposes of this motion to dismiss. The plaintiffs are four siblings: Talitha Baer-Stefanov (24 years old), Priscilla Baer (22 years old), Matthew Baer (20 years old) and Joshua Baer (18 years old). They desire to obtain Illinois state driver's permits and licenses but have not applied for them due to the fact that their religious beliefs prohibit them from using social security numbers as personal identifiers. In their SAC, the plaintiffs allege that their individual religious beliefs prohibit them from using a social security number as a personal identifier in violation of Revelation 13:16-17.

Illinois law requires that a person applying for a driver's license provide a social security number on his or her application. Specifically, section 6-106 of the Illinois Vehicle Code states in relevant part:

> Every application shall state the legal name, [and] social security number. . . of the

applicant. . . . The Secretary of State may in his discretion substitute a federal tax number in lieu of a social security number, or he may instead assign an additional distinctive number in lieu thereof, where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number. The Secretary of State shall, however, determine which religious orders or sects have such bona fide religious convictions.

In addition, Title 92 of the Illinois Administrative Code § 1063.63, entitled "Religious Exemption for Social Security Numbers," states in relevant part that:

a) Members of religious groups whose faith will not permit them to obtain social security numbers may request the social security number be omitted on their driver's license application.

b) The applicant for a special religious number shall state in the person's own handwriting on an exception form, supplied by the Secretary of State at a Driver Services Facility, that he or she is a member of a certain religious group and that the person wants to apply for a driver's license without applying for a social security card. The applicant shall affix his or her signature immediately after the statement on the exception form.

c) Personnel at the Driver Services Facility shall complete the exception form, attach it to the application for a driver's license, and mail it to the Director of Driver Services, 2701 S. Dirksen Parkway, Springfield, Illinois 62723. The exception form shall contain the applicant's full name and address, including the county. It shall also contain the applicant's driver's license or identification card number. This information shall appear as it was furnished on the application.

d) The application and exception form shall indicate 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 for the social security number.

e) The applicant shall be issued a 90-day temporary driver's license and a receipt if all other requirements have been met.

f) The applicant shall sign an affidavit, supplied by the Secretary of State, stating that the use of a social security number on a driver's license file is against his or her religious convictions and stating the reasons why the applicant holds these beliefs. The affidavit shall also contain a statement from his/her religious leader or minister attesting that the use of a social security number is against the religious convictions of the applicant's faith. The submitted affidavit shall be notarized.

g) The affidavit shall be sent to the Director of Driver Services, 2701 S. Dirksen

Parkway, Springfield, Illinois 62723. The Department will contact the religious leader to verify the information. The affidavit shall be attached to the original application and examined for compliance with this Section.

h) The applicant shall be notified in writing by the Director of Driver Services that the application has been approved or rejected because the applicant failed to comply with the provisions of this Section.

i) If approved, the applicant shall return to the Driver Services Facility with the letter of approval receipt to be issued a driver's license with a distinctive number assigned by the Department in lieu of the social security number. If rejected, the applicant shall be notified of the right to request an administrative hearing pursuant to 92 Ill. Adm. Code 1001 and IVC Section 2-118.

According to the plaintiffs, "though [their] religious order neither promotes or [sic] encourages voluntary participation in the federal Social Security program, it does not prohibit such; rather, it respects matters of individual conscience on such issues." SAC at ¶¶ 3(2), 4(2), 5(2), 6(2). They further allege that "[t]he Defendant has indicated in his response to third party Freedom of Information Act (FOIA) requests that applicants, such as this Plaintiff, will not have consideration for [their] individual beliefs." *Id.* at 3(5), 4(5), 5(5), 6(5). The plaintiffs further allege that they were denied access to an exception form at several drivers' services facilities, described above, due to a purported lack of availability.

In their SAC, the plaintiffs allege that the Illinois statute and regulation governing the issuance of driver's licenses to persons who object to providing their social security numbers is unconstitutional in that it violates their First Amendment right to freedom of religion and their Fourteenth Amendment right to equal protection. The plaintiffs also allege a claim under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.* The defendant moves to dismiss each count.

## II.     Standard on Motion to Dismiss

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The Seventh Circuit recently synthesized the relevant Supreme Court caselaw as follows:

> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of

the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, – F.3d –, 2009 WL 2535731, at *5 (7th Cir. Aug. 20, 2009).

Moreover, the *Brooks* court stated that the "plausibility requirement applies across the board, not just to antitrust cases." *Id*. However, the court should also take into consideration the complexity of the case when addressing whether a complaint alleges sufficient facts. *See Limestone Dev. Corp. v. Village of Lemont, Ill*., 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim "will depend on the type of case" and "[i]n a complex antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary"). Finally, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc*., 205 F.3d 323, 326 (7th Cir. 2000).

## III.    Analysis

### A.    Standing

"Generally, a person seeking to challenge a statute has standing to do so only as the statute applies to his or her own conduct." *U.S. v. National Training and Information Center, Inc*., 532 F. Supp. 2d 946, 952 (N.D. Ill. 2007)(*citing Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The defendant argues that the statute only applies to persons who do not have a social security number. 625 ILCS 5/6-106(b)(Secretary of State may provide an exemption "where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number"). According to the defendant, if the plaintiffs have social security numbers (they do not allege whether they do or not, only that their individual religious beliefs compel them to refrain from providing social security numbers to the defendant), they could not obtain the statutory exemption they are challenging. Thus, the defendant contends that the plaintiffs do not have standing to challenge the statute if they indeed have social security numbers.

Even assuming that the plaintiffs have social security numbers, the defendant's argument fails. The statute requires every driver's license application to include the applicant's social security number. The plaintiffs contend that they have an individual religious objection to providing their social security numbers. Thus, they may challenge the statute. Simply because the statute has restricted exemptions to situations "where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number" does not mean that the plaintiffs do not have standing to challenge the fact that they are required by the statute to provide a social security number.

That being said, these plaintiffs must establish that they have standing to bring the instant challenge. Specifically, in order to show standing:

> a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Pollack v. U.S. Dept. Of Justice*, --- F.3d ----, 2009 WL 2461398, at *2 (7th Cir. 2009)(citations omitted).

According to the plaintiffs, "[t]he Defendant has indicated in his response to third party Freedom of Information Act (FOIA) requests that applicants, such as this Plaintiff, will not have consideration for [their] individual beliefs." SAC at 3(5), 4(5), 5(5), 6(5). The plaintiffs further allege that they were denied access to an exception form at several drivers' services facilities, described above, due to a purported lack of availability. *Id*. at 3(3), 4(3), 5(3), 6(3). In addition, the plaintiffs allege that they were "informed by the central office in Springfield that they have 'no such exception form supplied by the Secretary of State at a driver services facility' despite the fact that such is required for compliance with [the] State administrative code." *Id*. at 3(4), 4(4), 5(4), 6(4).

Thus, the plaintiffs contend, not only have they been precluded from seeking an exemption due to the unavailability of an exception form, but even if they had been able to file for an exemption, it would have been denied because the basis for their exemption was based on their individual beliefs rather than as members of an organized order or sect. As such, the plaintiffs contend they have been deprived of their ability to obtain a driver's license. The court concludes that these allegations are sufficient to establish the plaintiffs' standing to bring suit. *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir. 2007)("[A]s long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress ..., the fact that a loss or other harm on which a suit is based is probabilistic rather than certain does not defeat standing.").

## B.    First Amendment–Free Exercise of Religion (Count I)

The plaintiffs allege that "[t]he entire process for approving a religious exemption [from] the requirement that a driver's license applicant must provide a social security number, [sic] only if the applicant's entire religious order (church) or sect (denomination) prohibits the use of the social security number, consists of a standardless, unguided, discretionary system enforced and executed by Defendant White . . ." SAC at ¶ 19.[1] Further, they allege that the "invidious,

---

[1]It is not clear what claim the plaintiffs seek to assert here. Although not framed as such, it is possible that the plaintiffs sought to allege a challenge to the discretionary aspect of the law

discriminatory process, as enforced and carried out by Defendant White . . . violates the guarantee found in the First Amendment . . . of the free exercise of religion." *Id.* at 21.

The First Amendment protects the free exercise of religion and was made applicable to the states through the Fourteenth Amendment. *Callahan v. Fermon*, 526 F.3d 1040, 1043 (7th Cir. 2008). The defendant moves to dismiss the plaintiffs' First Amendment claim on the ground that the exemption procedures of which the plaintiffs complain are neutral, generally applicable, and have only an incidental effect of burdening religious exercise.

---

as a prior restraint on speech, as did the plaintiffs in *Jacobs v. Clark County School Dist.*, 373 F. Supp. 2d 1162 (D. Nev. 2005). In *Jacobs*, the plaintiff brought a challenge to the mandatory school uniform policy alleging that it violated her freedom of expression. In reviewing the policy and regulations, the court stated:

> In reviewing [the relevant regulation], the Court has found two sections that provide almost unlimited discretion to school administrators to make exceptions to the mandatory uniform requirement once it has been adopted at a school, and these sections give the Court pause. . . . Section VI.D.4.a. provides that "No student shall be considered noncompliant with the policy in the following instances: a. When wearing standard student attire violates a student's/parent's religion." In [this] section[], school administrators are given unfettered discretion to determine whether and under what circumstances individuals should be required to wear the mandatory uniform. . . . Section VI.D.4.a. vests unfettered discretion in a school's administration to determine whether wearing the mandatory uniform violates a student's/parent's religion. By way of example, the Court notes that in considering whether the mandatory uniform requirement violates a students'/parent's religious beliefs, a school administrator may attempt to determine whether a given belief is or is not a valid religion. . . . [The relevant regulation] does not indicate ANY factors that are to be considered nor process or procedure that are to be implemented in determining whether a religious exemption should issue for a student. The Court finds that, in the absence of such definite and delineated considerations and procedures, the risk is great that impermissible consideration or caprice may enter into a determination of whether a religious exemption should issue, and that such impermissible consideration or caprice may lead to selective exemption that would have the effect of favoring certain religions over others. Such potentially viewpoint-specific determination of what expression is acceptable is the very pith of those concerns driving prior restraint jurisprudence.

*Id.* at 1184-85, *aff'd* 526 F.3d 419 (9th Cir. 2008). However, the plaintiffs do not allege such a claim and the court will not construe it as such.

As noted by the Supreme Court, "the protections of the Free Exercise Clause pertain if the law at issue . . . regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993)(citations omitted).  However, the United States Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Employment Division, Dep't. of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990).  Indeed, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id*. at 879 (internal quotes omitted).  *See also City of Boerne v. Flores*, 521 U.S. 507, 514 (1997) ("*Smith* held that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling government interest").

The nature of the government action determines the appropriate level of scrutiny.  If, as discussed above, the law is facially neutral and generally applicable, then the plaintiffs' free exercise claim fails if the law is supported by a rational basis.  *Smith*, 494 U.S. at 879.  "On the other hand, if the law is not neutral (*i.e.*, if it discriminates against religiously motivated conduct) or is not generally applicable (*i.e.*, if it proscribes particular conduct only or primarily when religiously motivated), strict scrutiny applies . . . ."  *Tenafly Eruv v. The Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002)(*citing Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)).  "A law failing to satisfy these requirements [of facial neutrality and general applicability] must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest."  *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

As described above, the defendant asserts that the law is facially neutral and generally applicable and is, therefore, subject to rational basis review.  In support, the defendant again points to *Mefford v. White*, 770 N.E.2d 1251 (Ill. App. Ct. 2002), in which the Illinois Appellate court addressed the issue currently before the court.  The plaintiff had applied for a driver's license and sought relief, pursuant to administrative rule § 1030.63, quoted above, from the submission of his social security number based on his religious beliefs.  *Id*. at 1253.  The Director of the Driver's Services Department denied his request because "the plaintiff had not shown he was a member of a religious faith that did not permit its members to obtain social security numbers, as required by the statute and the rule."  *Id*.  The plaintiff sought an administrative hearing at which he testified that the social security number can be used as a "universal identifier" about which the Book of Revelations warns.  As in the case here, the plaintiff testified that his church does not prohibit the use of social security numbers but that "his views reflected his individual conclusion."  *Id*.  The hearing officer concluded that while the plaintiff professed a bona fide and sincere religious belief, he had not satisfied the requirements of § 1030.63 because the plaintiff's church permitted "its members to obtain social security numbers and that 'most, if not all' of the members of plaintiff's church have provided social security numbers on driver's license applications."  *Id*. at 1254. The hearing officer, however, recommended that the plaintiff's request be granted because the statute and rule violated the free

exercise clause of the First Amendment. *Id.*

The Secretary of State issued a final decision denying the plaintiff's request for a driver's license because "the plaintiff failed to meet the rule's requirements for a religious exemption . . . ." *Id.* The plaintiff then filed a complaint for administrative review in state court challenging only the constitutionality of the statute and the rule. *Id.* The state court affirmed the Secretary's decision and the plaintiff appealed.

On appeal, the Illinois Appellate Court found the requirement that a person provide a social security number prior to obtaining a driver's license to be a neutral, generally applicable law. Specifically, the court stated that:

> According to the Supreme Court, a law is not "neutral" if the object of the law is to infringe upon or restrict practices because of their religious motivation. In the case at bar, we fail to see how the statute and rule at issue could not be seen as neutral. Facially, the statute and rule do not target religious practice and are not aimed at regulating any activity that could be even considered religious. Certainly, applying for a driver's license is not among traditional religious practices. Further, the statute and rule cannot be said to be a "covert suppression of particular religious beliefs' [Citation.]." Plaintiff's beliefs notwithstanding, we are not persuaded that requiring an applicant for a driver's license to prove his identity as fully as possible has, as its primary purpose, some form of "religious gerrymander." In sum, we find section 6-106(b) of the Vehicle Code and Title 92, section 1030.63, of the Illinois Administrative Code to be neutral.

> Similarly, we are not persuaded that the statute and rule at issue are not generally applicable. While the Supreme Court has not defined with precision the standard used to evaluate whether a law is of general application, we do not find, and plaintiff has not offered, any reason why the statute and rule are not generally applicable. Every applicant for a driver's license must supply his social security number, unless he has not obtained a social security number on the basis of religious belief or is exempt from obtaining a social security number. 625 ILCS 5/6-106(b) (West 1998) ("*Every* application *shall* state the * * * social security number * * * of the applicant * * *" (emphases added)). The only exemption from providing the social security number is not based on any religious classification but on the mere fact that an applicant has not obtained a social security number. This demonstrates no animosity by the legislature to any religious group or practice, and may, in fact, reflect an acknowledgment that religious practice may involve a conscious choice to not apply for a social security number. Overall, the statute and rule have only an incidental effect on religious practice.

*Id*. at 1258 (internal citations omitted).[2]  *See also Miller v. Reed*, 176 F.3d 1202, 1206-08 (9th Cir. 1999)(concluding that requirement that driver's license applicants provide social security numbers did not violate free exercise clause of the First Amendment); *Stoianoff v. Commissioner of Motor Vehicles*, 107 F. Supp. 2d 439, 449-50 (S.D.N.Y. 2000)(rejecting free exercise challenge to requirement that driver's license applicants provide social security numbers), *aff'd without pub. op.*, 12 Fed. Appx. 33 (2nd Cir. 2001).

The court, as a general matter, agrees with the cases cited by the defendant that facially neutral and generally applicable laws requiring the provision of a social security number drivers' license are subject to rational basis scrutiny and do not violate the Free Exercise Clause. However, the defendant's brief is again silent regarding the portion of the statute and the rule that appear to be the basis of the plaintiff's primary objection–that the requirements in 5/6-106(b) and 1030.63 that an individual obtain a statement from his or her religious leader "attesting that the use of a social security number is against the religious convictions of the applicant's faith," and that the Secretary of State "determine[s] which religious orders or sects have such bona fide religious convictions" violate the Free Exercise Clause.

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Church of the Lukumi*, 508 U.S. at 533.  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*.  Moreover, as noted by the Supreme Court, "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with facial neutrality." *Church of the Lukumi*, 508 U.S. at 534.  *See also Tenafly Eruv*, 309 F.3d at 166 ("Because the ordinance in *Lukumi* gave officials discretion to consider 'the particular justification' for each violation, it 'represent[ed] a system of individualized government assessment of the reasons for the relevant conduct," triggering under *Smith* strict scrutiny of the ordinance's application to religiously motivated conduct.")(citations and internal quotation marks omitted).

Although the *Mefford* court concluded that the statute and rule were facially neutral because they "do not target religious practice and are not aimed at regulating any activity that could be even considered religious," *Mefford*, 770 N.E.2d at 175-76, the *Mefford* court does not appear to have focused on the exemption provisions of the statute and rule, which arguably allow for application of the exemption on a discretionary basis depending on the bona fide nature of the person's religion.[3]  Moreover, contrary to the *Mefford* court's conclusion that the "only

---

[2]Indeed, as noted by another court, "virtually every other jurisdiction that has addressed a claim that furnishing one's social security number violates free exercise rights has rejected the argument." *See Champion v. Secretary of State*, 761 N.W.2d 747, 757 n.8 (Mich. Ct. App. 2008), and cases cited therein.

[3]While this is the same basis on which the court denied the defendant's original motion to dismiss, the defendant has made no effort to address this point in its motion to dismiss the SAC.

exemption is not based on any religious classification," and is thus generally applicable, the statute expressly provides that the "Secretary of State shall . . . determine which religious orders or sects have . . . bona fide religious convictions" and therefore may be subject to a particular exemption.

The defendant also contends in its reply brief that the procedures "track the requirements under federal law for being exempt from having a social security number." Reply at 4 (emphasis in original). According to the defendant, the procedures "do not target religious belief as much as they target the federal standards." *Id*. As an initial matter, the defendant's failure to raise this argument in his opening motion means it is waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004)(holding that arguments raised for the first time in a reply brief are considered waived). In any event, the defendant does not point to any authority concluding that the federal standards are constitutional.[4]

Because the defendant has not fully addressed the issues associated with the plaintiffs' claim under the Free Exercise Clause, the court denies the defendant's motion to dismiss.

### C.      Equal Protection (Count II)

The plaintiffs assert that by allowing exemptions to individuals who belong to sects or denominations that forbid providing a social security number while allegedly denying the exemption to individual conscientious objectors, as these plaintiffs allege they are, the statute and rule violate the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

---

[4]The only case the defendant cites to is an inapposite New Jersey Superior Court case, *Alpert v. Harrington*, 925 A.2d 716 (N.J. Super. Ct. App. Div. 2007). In *Alpert*, the plaintiff asserted that he was exempt from providing his social security number on his application for renewal of his driver's license because he had revoked any social security registration he had obtained before he reached legal age. The only exemption allowed under the relevant driver's license regulation was for "persons who are exempt from applying for a social security number." *Id*. at 717. The New Jersey Motor Vehicle Commission denied his application on the ground that he had not shown that he was exempt from applying for a social security number and the Superior Court of New Jersey affirmed. The *Alpert* court concluded that the plaintiff's submission of a revocation form to the Social Security Administration was insufficient. Rather, the *Alpert* court concluded that the drivers license regulation had to be read to provide an exemption only to persons who qualified for a federal statutory exemption, such as being exempt under 26 U.S.C. § 1402(g) from paying federal social security taxes based on membership in a "recognized religious sect." Because the plaintiff had not done so, the court affirmed the rejection of his application. This conclusion, however, does not answer the question of whether Illinois' relevant statute and regulation are constitutional.

XIV.

As noted by the Seventh Circuit:

> The purpose of the Equal Protection Clause of the Fourteenth Amendment is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Where . . . no fundamental right or suspect classification is at issue, equal protection claims are evaluated under the rational-basis standard of review.

*Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006)(internal citations omitted). However, if a statute classifies by race, alienage, or national origin, it will be subject to strict scrutiny. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006)(citation omitted). Moreover, "[h]eightened scrutiny also is appropriate when government action interferes with a person's fundamental rights, such as freedom of speech or religion." *Id*. (citation omitted).

Here, the plaintiffs allege that the exemption provision "classifies" on the basis of religion and therefore the court should apply strict scrutiny to the statute and regulation. According to the plaintiffs, the statute impermissibly distinguishes between those with individually-held religious beliefs versus those with group-held religious beliefs. Neither party has addressed whether those with individually-held religious beliefs constitutes a suspect class and it is not clear to the court that such a characterization is appropriate. *See Johnson v. Robison*, 415 U.S. 361, 375 n. 14 (1974) (declining to categorize group of religious conscientious objectors as a suspect class). Instead, it would appear that the plaintiffs' position is instead that the statute and regulation impinge on their freedom of religion. In such a case, the Seventh Circuit has stated that the "fundamental rights theory of heightened equal protection scrutiny applies only to laws that effect 'grave interference with important religious tenets or . . . affirmatively compel [individuals] to perform acts undeniably at odds with fundamental tenets of their religious beliefs.'" *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 766 (7th Cir. 2003)(citation omitted)(alteration added).

Neither party addresses whether the plaintiffs' position meets this standard. The defendant instead asserts that because the statute and regulation are facially neutral and generally applicable, the rational basis standard applies. *See Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)(citations omitted). In support, the defendant reiterates its previous argument that the exemption procedure giving the Secretary of State the discretion to ascertain which religious sects or orders have such bona fide religious convictions "is no different than standards already recognized under federal law." Reply at 10. Specifically, the defendant refers to § 1402(g)(1) of the Internal Revenue Code, which allows a person to seek an exemption from paying certain social security taxes, and states as follows:

> (g) Members of certain religious faiths.--
>     (1) Exemption.--Any individual may file an application (in such form and

manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). *Such exemption may be granted* only if the application contains or is accompanied by--
(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and
(B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,
and *only if the Commissioner of Social Security finds that--*
*(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,*
(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and
(E) such sect or division thereof has been in existence at all times since December 31, 1950.

26 U.S.C. § 1402 (g)(1)(emphasis added).

While the court acknowledges that the Illinois statute appears to contain similar language to the federal statute quoted above, the defendant fails to point to any authority concluding that the federal statute is facially neutral and generally applicable. Thus, simply citing the federal statute does not further the defendant's argument in this regard.

## D.     Strict Scrutiny

The defendant argues in the alternative that even if the procedures are not construed to be facially neutral and generally applicable, the statute and regulation should be found not to violate the Free Exercise and Equal Protection Clauses because they further a compelling state interest. Specifically, the defendant asserts that "Illinois has a compelling state interest in limiting the number of exemptions it provides and to maximize applicants' use of their social security numbers as an identifier." Memorandum in Support at 11. The defendant notes that "without a

requirement that a religious objection to use one's social security number also be shared by the applicant's church as a whole, any applicant wishing to hide problematic driving records could claim this exemption without any means for the Secretary to verify the truthfulness of an applicant's assertion." *Id*. at 12. In addition, the defendant points out that the statute and regulation's exemption procedures are consistent with the comparable federal exemption procedures, such as the one under 26 U.S.C. § 1402 (g)(1), quoted earlier. Further, the defendant points out that federal law requires states to establish a database which records the social security numbers of any person applying for a driver's license. According to the defendant, "[g]iven this mandate, Defendant believes that there is a compelling state interest in applying the State's exemption procedures set out in the Illinois statute and rule in a manner consistent with federal exemption standards." *Id*. at 13.

The plaintiffs respond only that the "distinction does not serve the asserted interest" because "[a] person could just as easily attend a church that would be exempt from providing social security numbers, and apply for a license without providing a number in order to hide a 'problematic driving record' or avoid a child support order." Response at 5.

However, "[w]hether an interest is compelling is a question of fact, not properly decided on a motion to dismiss." *C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1996 WL 89241, at *22 (N.D. Ill. Feb. 27, 1996). Even were the court to consider at this juncture that the statute furthers a compelling state interest, the parties fail to address whether the statute is narrowly tailored.

The defendant's motion to dismiss on the ground that the statute and rule satisfy the strict scrutiny analysis is denied.

### E.      Illinois Religious Freedom Restoration Act ("IRFRA")(Count III)

The defendant moves to dismiss the IRFRA claims on the ground that the court should not exercise supplemental jurisdiction over the state law claim because the plaintiffs have failed to state a federal claim. See 28 U.S.C. § 1367(c). However, because the court is not dismissing the federal claims, it will continue to exercise jurisdiction over the IRFRA claim.


**ENTERED:**

**Date: October 22, 2009**                    _____

                                              **Blanche M. Manning**
                                              **United States District Judge**