UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TALITHA BAER-STEFANOV, PRISCILLA BAER, MATTHEW BAER, and JOSHUA BAER, | ) ) ) | |
| Plaintiffs, | ) ) ) | 08 C 3886 |
| vs. | ) ) | Judge Feinerman |
| JESSE WHITE, in his official capacity as Secretary State of Illinois, | ) ) ) ) | |
| Defendant. | ) ) | |

**M<span>EMORANDUM</span> O<span>PINION AND</span> O<span>RDER</span>**

Plaintiffs Priscilla Baer, Matthew Baer, and Joshua Baer—Talitha Baer-Stefanov, originally a plaintiff, has voluntarily dismissed her claims—brought this lawsuit against Defendant Jesse White, Secretary of State of Illinois, alleging that certain driver's license application procedures employed by the Secretary violate the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.* ("Illinois RFRA"). The case is dismissed without prejudice for want of subject matter jurisdiction because the Baers lack standing to pursue their claims.

Illinois law ordinarily requires driver's license applicants to provide a social security number, but recognizes an exception for religious objectors:

> The Secretary of State may in his discretion substitute a federal tax number in lieu of a social security number, or he may instead assign an additional distinctive number in lieu thereof, where an applicant is prohibited by bona fide religious convictions from applying or is exempt from applying for a social security number. The Secretary of State shall, however, determine which religious orders or sects have such bona fide religious convictions.

625 ILCS 5/6-106(b). The statute does not clearly say whether the Secretary may allow exemptions only on a religion-by-religion or sect-by-sect basis—that is, only if the religion or sect prohibits all adherents applying for a social security number—or also where an applicant's personal faith (but not her religion or sect generally) imposes that prohibition. The implementing regulation promulgated by the Secretary, however, suggests in subsection (f) that an exemption may be granted based on an applicant's personal faith, so long as the applicant and her religious leader attest that using a social security number violates the applicant's convictions and beliefs:

> a) Members of religious groups whose faith will not permit them to obtain social security numbers may request the social security number be omitted on their driver's license application.
>
> b) The applicant for a special religious number shall state in the person's own handwriting on an exception form, supplied by the Secretary of State at a Driver Services Facility, that he or she is a member of a certain religious group and that the person wants to apply for a driver's license without applying for a social security card. The applicant shall affix his or her signature immediately after the statement on the exception form.
>
> c) Personnel at the Driver Services Facility shall complete the exception form, attach it to the application for a driver's license, and mail it to the Director of Driver Services … .
>
> d) The application and exception form shall indicate 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 for the social security number.
>
> e) The applicant shall be issued a 90-day temporary driver's license and a receipt if all other requirements have been met.
>
> f) The applicant shall sign an affidavit, supplied by the Secretary of State, stating that the use of a social security number on a driver's license file *is against his or her religious convictions* and stating the reasons *why the applicant holds these beliefs*. The affidavit shall also contain *a statement from his/her religious leader or minister attesting that the use of a social security number is against the*

        *religious convictions of the applicant's faith.* The submitted affidavit shall be notarized.

   g)     The affidavit shall be sent to the Director of Driver Services … . The Department will contact the religious leader to verify the information. The affidavit shall be attached to the original application and examined for compliance with this Section.

   h)     The applicant shall be notified in writing by the Director of Driver Services that the application has been approved or rejected because the applicant failed to comply with the provisions of this Section.

   I)     If approved, the applicant shall return to the Driver Services Facility with the letter of approval receipt to be issued a driver's license with a distinctive number assigned by the Department in lieu of the social security number. If rejected, the applicant shall be notified of the right to request an administrative hearing pursuant to 92 Ill. Adm. Code 1001 and IVC Section 2-118.

92 Ill. Admin. Code § 1030.63 (emphasis added).

     The Baers assert, and the Secretary does not deny, that several driver's license facilities they contacted did not have the form necessary to apply for a religious exemption. But it is clear that the Secretary accepts such applications, and the Baers have submitted a copy of the appropriate document, which combines the exception form referenced in subsection (b) and the affidavit/attestation form referenced in subsection (f). The application appears as follows:

**REQUEST FOR CONSIDERATION TO RECEIVE**
**AN ILLINOIS DRIVER'S LICENSE WITHOUT USE OF A**
**SOCIAL SECURITY NUMBER**

**<u>AFFIDAVIT</u>**

    State of Illinois
    County of _____

    ILLINOIS DRIVER'S LICENSE NUMBER: _____

    I, _____ do hereby affirm that the use of a social security number on my application for driver's license is against the religious convictions of my religious faith or sect for the reasons indicated below:

> _____
> _____
> _____
> _____
> _____
> (Attach additional pages, if necessary)
>
> Dated: _____  Signed: _____
>
> Subscribed and sworn to me before this __ day of _____, 20__
>
>     SEAL          _____
>                             NOTARY PUBLIC
>
> **<u>ATTESTATION</u>**
>
> I, the undersigned, being a religious leader or minister, do hereby and hereon attest that my personal knowledge verifies that the use of a social security number is against the religious convictions of the _____ faith, and that I am a religious leader or minister of that religious faith or sect.
>
> I further attest that the applicant is a member of that faith or sect and is therefore, prohibited by that faith or sect from obtaining a social security number.
>
> Signed: _____ DATE: _____
>
> Title: _____
>
> Denomination or Religious Group: _____
>
> Address: _____

Doc. 105-9 at 2. The attestation portion of the application reasonably could be read to require the religious leader to attest that her religion or sect generally prohibits adherents from obtaining a social security number.

The Baers' individual religious beliefs posit that Revelation 13 prohibits them from using social security numbers as personal identifiers. *See* Revelation 13:17 (King James) ("And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of

his name."). The Baers' religious order, which they describe without elaboration as "Christian," neither encourages nor prohibits participation in the social security program, leaving such matters to an adherent's individual conscience. The Baers have not applied to the Secretary for a religious exemption. The premise underlying this lawsuit is that the Secretary would deny their applications because their aversion to social security numbers arises from an individual religious tenet rather than a tenet imposed by their religious order. The anticipated rejection of their applications, the Baers claim, would violate the Free Exercise Clause, the Equal Protection Clause, and the Illinois RFRA. *See generally Champion v. Sec'y of State,* 761 N.W.2d 747, 757 n.8 (Mich. App. 2008) (collecting authorities that address comparable claims).

On October 22, 2009, the court denied the Secretary's motion to dismiss the operative complaint for failure to state a claim. *See* 2009 WL 3462421 (N.D. Ill. Oct. 22, 2009) (Manning, J.). In so doing, the court also rejected the Secretary's contention that the Baers lack standing on the ground that it is unclear whether they have social security numbers. *Id*. at *3-4. On June 15, 2010, this court denied without prejudice the Baers' motion for a preliminary injunction. *See* Doc. 100 (Manning, J.). In so doing, the court ordered the Baers to show cause why this case should not be dismissed for lack of standing because they have not applied for a religious exemption. The Baers have responded, and the Secretary filed a short reply.

The three elements of Article III standing are:

> (I) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision.

*Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" these elements with "competent proof" and by a preponderance of the evidence. *Ibid*.

The Baers argue at the threshold that because they have brought a "facial challenge" to the governing statute and regulation, they need not satisfy traditional standing requirements. In support, the Baers cite *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 129-130 (1992), and *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988), free speech cases that dispense with traditional standing requirements where the plaintiff facially challenges an overbroad regulation or prior restraint. But the exception to ordinary standing requirements is limited to the free speech context, and as this is not a free speech case, the Baers are subject to those requirements. *See Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 37-41 (1999); *United States v. Hays*, 515 U.S. 737, 743-44 (1995).

The injury-in-fact element of the traditional standing analysis poses an insurmountable hurdle to the Baers' lawsuit. Because the Baers have not applied for, and thus have not been denied, a religious exemption from the social security number requirement, their injury is threatened, not actual. Where only a threatened injury is at issue, "a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) (citing cases). Moreover, where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the injury-in-fact requirement calls for "a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992).

These principles, applied in cases like this one, yield the general rule that a plaintiff who does not apply for or request some benefit or action lacks standing to challenge the procedures or standards governing such applications or requests. *See*, *e.g.*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972) (African-American man challenging lodge's whites-only membership policy lacks standing because he never sought to become a member); *Lehon v. City of Atlanta*, 242 U.S. 53, 55-56 (1916) (non-resident who never applied for permit lacks standing to challenge licensing ordinance on ground that city discriminates in favor of residents); *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 488-89 (7th Cir. 1988) (massage parlor lacks standing to challenge licensing requirements and procedures for suspending or revoking licenses because it had not applied for a license, did not demonstrate a likelihood of denial in the future, and did not demonstrate that the city sought to suspend or revoke license); *S. Blasting Servs., Inc. v. Wilkes County, N.C.*, 288 F.3d 584, 595 (4th Cir. 2002) (plaintiff engaged in blasting business lacks standing to bring procedural due process challenge to licensing ordinance because "plaintiffs have never even applied for a permit, much less been denied one"); *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1095-98 (2d Cir. 1997) (inmate lacks standing to challenge prison's refusal to allow him to wear certain religiously-mandated clothing where inmate did not attempt to register his religious affiliation with the prison); *Chance Mgmt., Inc. v. South Dakota*, 97 F.3d 1107, 1115-16 (8th Cir. 1996) (individual has no standing to challenge licensing requirement when he has not applied for a license); *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220-22 (9th Cir. 1992) (student lacks standing to sue university for failing to provide free handicap parking permits where student did not apply for a free permit) (citing cases).

The Baers attempt invoke an exception to the general rule reserved for circumstances where an application or request would be futile. *See Nyquist v. Mauclet*, 432 U.S. 1, 6 n.7

(1977); *Ellison v. Connor*, 153 F.3d 247, 254-55 (5th Cir. 1998). The exception does not apply here. As noted above, and as the Baers admit (*see* Doc. 106 at 5-6), the regulation reasonably could be interpreted to permit an exemption where an applicant and her religious leader attest that the applicant's personal religious convictions prohibit obtaining a social security number, even if the applicant's order or sect does not impose the same prohibition on all adherents. The Baers acknowledge that the statute could be interpreted that way as well. *See ibid*. This case therefore is unlike those where the relevant government actor is constrained by law to deny the application. *See Nyquist*, 432 U.S. at 6 n.7 ("appellants conceded in the District Court that any application from Rabinovitch for a loan would be refused because of § 661(3)"). The Secretary, on whom the statute confers "discretion," 625 ILCS 5/6-106(b), could grant the Baers' applications. *Cf. Mefford v. White*, 770 N.E.2d 1251, 1255 (Ill. App. 2002) (rejecting Free Exercise challenge to statute and regulation, but expressly not addressing whether an applicant similar to the Baers complied with the statute and regulation as a matter of Illinois law).

To support their view that applying for an exception would be futile, the Baers each submit a declaration averring that Robert Mueller, an attorney for the Secretary of State, informed their father "that the [Secretary of State] would not allow [the plaintiffs] to apply without having a religious leader attest that his/her entire organization prohibited the use of the SSN; as the hearing board would reject the application anyway." Doc. 105-2, ¶ 29; Doc. 105-3, ¶ 22; Doc. 105-4, ¶ 25. There is no indication that Mueller's view is shared by the Secretary's other employees or by the Secretary himself, that Mueller is still employed by the Secretary, or, if so, that Mueller continues to play any role in reviewing applications for religious exemptions.

In any event, even if Mueller's statement were deemed a party admission by the Secretary, the Baers' reports of what their father told them about what Mueller told him are

inadmissible hearsay.  *See Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 824-25 (7th Cir. 1999) (excluding "hearsay within hearsay" where the "outer layer," but not the "inner layer," was barred by the hearsay rule); *see also Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010).  The Baers' averments therefore are not competent evidence at all, let alone evidence establishing by a preponderance of the evidence that their applications would be futile.  *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) ("Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with competent proof.") (internal quotation marks omitted); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255-56 (9th Cir. 2008) ("In response to a summary judgment motion or a trial court's post-pleading stage order to establish Article III standing, a plaintiff can no longer rest on mere allegations but must set forth by affidavit or other admissible evidence specific facts … as to the existence of such standing.") (internal quotation marks omitted).

The Baers also note that a hearing officer in the Secretary of State's office, in a decision adopted by the Secretary in October 2007, denied a religious exemption to an individual who, like the Baers, claimed that her personal religious convictions, but not the generally applicable tenets of her faith, prohibited her from obtaining a social security number.  *See* Doc. 105-12.  The Secretary denied a similar request in 2000 in *Mefford*, *see* 770 N.E.2d at 1253, but, as noted above, the Appellate Court of Illinois did not review the Secretary's interpretation of the governing statute and regulation.  The record does not indicate, one way or the other, whether the Secretary has issued other decisions on this subject and, if so, what they held.  The existence of a two negative decisions over a ten-year period does not mean that it would be futile for the Baers to submit their own exemption requests.  This conclusion finds support in *Jackson-Bey*,

where the Second Circuit held that the futility exception did not apply even where individuals similarly situated to the plaintiff had been denied a religious accommodation, reasoning that "it is not at all clear that [plaintiff's] sect would not have been accommodated had [plaintiff] registered and formally brought the subject to the attention of defendants." 115 F.3d at 1097. Likewise, having been apprised in this litigation of the Baers' uncommon, though not unique, circumstances, perhaps the Secretary will see fit to exercise the discretion afforded him by Illinois law to treat exemption requests citing an individual religious conviction on par with requests citing a religious tenet governing all members of a sect or order.

In sum, the Baers have not suffered injury-in-fact, and thus do not have Article III standing to pursue their claims. The case is dismissed without prejudice for want of subject matter jurisdiction.

February 25, 2011

United States District Judge